UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

    Plaintiff,

v.

1. $150,000 IN U.S. CURRENCY,
2. $190,000 IN U.S. CURRENCY,

    Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 21-2040 (MJD/ECW)

---

Craig R. Baune, Assistant United States Attorney, Counsel for Plaintiff.

Lauren J. Campoli, Counsel for Claimant Jing Cheng.

Jean Brandl, Counsel for Claimant Ying Cheng.

---

This matter is before the Court on the Claimants'[1] Motion to Dismiss. (Doc. No. 6.)

**I.    Background**

The Complaint alleges that Jing Chen and others used proceeds obtained from performing illicit massages, in the form of commercial sex acts provided to male clients, in violation of the Mann Act – specifically transportation to engage

---

[1] The motion to dismiss was filed by Claimant Jing Chen and Claimant Ying Chen has moved to join in that motion. The motion to join is granted.

1

in prostitution.  (Comp. ¶ 7.)  It is further alleged that Jing Chen and others would bring commercial sex workers from across the United States into Minnesota to perform sex acts.  (Id. ¶ 10.)  Jing Chen and others would use the proceeds to promote their illicit massage business ("IMB") and to conceal the true ownership of the IMBs and the source of illicit funds.  (Id. ¶ 11.)

On May 10, 2018, the government executed warrants targeting Jing Chen and others named and not named in the Complaint, their residences, businesses and their banking institutions.  Federal agents searched Ms. Chen's residence and seized a number of items and electronics believed to be associated with criminal activity.  Federal agents also seized $340,000 in cash from two safe deposit boxes located at a Wells Fargo and a U.S. Bank in Wisconsin (referred to as the "Wisconsin currency").  On that same date, various sums of currency were seized in Minnesota (referred to as the "Minnesota currency").  The Minnesota currency was the subject of a separate action.  (See United States v. $27,683 in U.S. Currency et al., 21-cv-1604 (MJD/DTS)).

The government alleges that the Wisconsin currency was first removed from a safe deposit box in Minnesota by Jing Chen and Ying Chen, who then

drove to Wisconsin where they transferred the funds to Fenglan Wu, who then placed them in safe deposit boxes. (Id. ¶¶ 21-28, 31-32.)

The United States Customs and Border Protection ("CBP") commenced administrative forfeiture proceedings for the Minnesota currency. (Case No. 18-mc-78 (MJD/DTS).) With respect to the Wisconsin currency, the IRS Criminal Investigation Division ("IRS-CID") chose not to commence administrative forfeiture proceedings, and instead held those funds for judicial forfeiture.

Because the CBP commenced administrative forfeiture proceedings against the Minnesota currency, the deadlines that apply to such proceedings under 18 U.S.C. § 983(a)(1) were triggered. The parties subsequently executed six stipulations to extend the government's time to file a judicial forfeiture proceeding against those funds. (Case No. 18-mc-78, Doc. No. 20, ¶¶ 2-4.)

On July 12, 2021, rather than obtain a seventh extension, the government commenced the separate action against the Minnesota currency. (United States v. $27,683 in U.S. Currency et al., 21-cv-1604 (MJD/DTS).) On August 16, 2021, counsel for Jing Chen sent a copy of a Federal Torts Claim Act claim to the Government relating to her allegation that the seizure and retention of the Wisconsin currency was improper. (Id. Doc. No. 32-1.) Chen also filed a motion

3

to intervene to assert claims relating to the Wisconsin currency. (Id. Doc. No. 13.) The Government deemed these communications as a written demand for the return of the Wisconsin currency and commenced this forfeiture action as a result.

Ying Chen filed a Verified Claim in this action asserting she is an innocent owner of $80,000 of the $190,000 seized from the U.S. Bank safe deposit box 2968. Jing Chen also filed a Verified Claim asserting she is an innocent owner of $20,000 of the $190,000 cash seized from the safe deposit box 2968 and all of the $150,000 seized from the Wells Fargo safe deposit box. On October 22, 2021, Fenglan Wu filed a Verified Claim in which she asserts she is an innocent owner of $90,000 of the $190,000.

Jing Chen and Ying Chen were criminally indicted on November 23, 2021. (United States v. Jing Chen et al., 21-cr-250 (JRT/TNL).) The forfeiture allegations in the Indictment include the Wisconsin currency and a portion of the Minnesota currency. The Government asserts the Chens did not file a motion for return of property at any time for any of the currency.

**II.     Motion to Dismiss**

Claimants Jing Chen and Ying Chen move to dismiss this case claiming the government failed to provide timely notice of the seizure and intent to forfeit the currency within 60 days after the date of seizure as required by the Civil Asset Forfeiture Reform Act ("CAFRA"), 18 U.S.C. § 983 (a)(1)(A)(i). CAFRA provides that "[e]xcept as provided in clauses (ii) through (v), in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute, with respect to which the Government is required to send written notice to interested parties, such notice shall be sent in a manner to achieve proper notice as soon as practicable, and in no case more than 60 days after the date of the seizure." Id. Where the government fails to give timely notice, it shall return the property to that person without prejudice to the right of the government to commence a forfeiture proceeding at a later time. 18 U.S.C. § 983(a)(1)(F). Claimants assert the rules set forth in § 983 do not permit the filing of a civil suit three years after an undisclosed seizure.

Claimants further argue that the government could avoid the notice requirement if it filed a civil suit or obtained a criminal indictment prior to the end of the 60 day notice period, but that did not happen in this case. The

5

currency was seized in May 2018, and this action was not filed until September 2021 and an indictment was not obtained until November 2021.

Claimants argue the government must return the currency pursuant to the civil forfeiture "death penalty provision" which provides:

> If the Government does not - . . .
>
>> (ii) before the time for filing a complaint has expired --(I) obtain a criminal indictment containing an allegation that the property is subject to forfeiture; and (II) take the steps necessary to preserve its right to main custody of the property as provided in the applicable criminal forfeiture statute,
>
> the Government shall promptly release the property pursuant to regulations promulgated by the Attorney General, and may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense.

Section 983(a)(3)(B)(ii).

The Court finds that the general rules for civil forfeiture proceedings set forth in 18 U.S.C. § 983 apply only to administrative forfeiture proceedings. See United States v. 1866.75 Board Feet and 11 Doors and Casings, 587 F. Supp.2d 740, 751 (E.D. Va. 2008) (finding there is no authority that 18 U.S.C. § 983 applies to judicial forfeiture proceedings) aff'd sub nom. United States v. Thompson, 332 F. App'x 882 (4th Cir. 2009); United States v. $11,052 in U.S. Currency, 670 F. App'x 967 (9th Cir. 2016 ) (finding filing deadlines set forth in 18 U.S.C. § 983 do

not apply where the government did not commence nonjudicial civil forfeiture proceedings); Langbord v. United States Dep't of Treasury, 832 F.3d 170, 182 (3d Cir. 2016) cert. denied, 137 S.Ct. 1578 (2017) (finding § 983 deadlines apply to nonjudicial or administrative forfeiture proceedings and that seizure of property does not alone initiate forfeiture proceedings because seizure does not implicate a transfer of legal title - whereas the function of a forfeiture proceeding is to transfer legal title). As this is a judicial forfeiture proceeding, neither the 60 day deadline in § 983 (a)(1)(F) or the death penalty provision in § 983 (a)(3)(B) applies.

For the same reasons, Claimants' arguments that §§ 983 (a)(1)(F) and (a)(3)(B) require return of the property are unavailing. See 1866.75 Board Feet, 587 F. Supp.2d at 751 (finding § 983(a)(3) applies to a nonjudicial forfeiture proceeding); see also United States v. One 2017 Mercedes Benz GLC300, No. 11-35923, 2018 WL 4964635 *3 (E.D. Wis. Oct. 15, 2018) (because return of property under § 983(a)(1)(F) is without prejudice, and where a judicial forfeiture proceeding has been initiated, returning the property because of a missed deadline, where the government can immediately reseize, would be a meaningless exercise).

Finally, Claimants argue their position is supported by the DOJ's Asset Forfeiture Policy Manual (2021) p. 23, www.justice.gov/criminal-afmls/file/839521/download.  The Court finds, however, that the Policy Manual does not create or confer any legal rights upon which Claimants can seek relief.  Id. at 1 ("The *Policy Manual* sets forth the policies of the Department of Justice.  It does not, however, create or confer any legal rights, privileges or benefits that may be enforced in any way by private parties.  See United States v. Caceres, 440 U.S. 741 (1979).")  In addition, the page cited by Claimants specifically provides that the 90 day deadline applies only where an asset was the subject of an administrative forfeiture proceeding.  Thus, the Manual is consistent with the case law on this subject.

As no administrative forfeiture proceeding was commenced with regard to the Wisconsin currency, the motion to dismiss will be denied.

IT IS HEREBY ORDERED that Claimants' Motion to Dismiss [Doc. No. 6] is **DENIED.**

Date:   March 14, 2022

>                         s/Michael J. Davis
>                         Michael J. Davis
>                         United States District Court